UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SHEA W., | : |
|       Plaintiff, | : |
| | : |
|       v. | :   C.A. No. 25-210-PAS |
| | : |
| FRANK BISIGNANO, | : |
| Commissioner of the Social Security | : |
| Administration, | : |
|       Defendant. | : |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

      On September 14, 2022, Plaintiff Shea W., aged forty-nine, filed his second[1] application for Supplemental Security Income ("SSI") under the Social Security Act, alleging disability based on diverticulosis, depression, post-traumatic stress disorder ("PTSD"), epididymo-orchitis (testicular inflammation), and dyspnea (shortness of breath). Tr. 60. Soon after application, Plaintiff's primary physical impairment (recurrent diverticulitis) was resolved with surgery and is no longer in issue. Tr. 39. Based on administrative review, initially, on reconsideration and by an administrative law judge ("ALJ"), Plaintiff's mental health conditions – bipolar disorder, antisocial personality disorder, PTSD, and anxiety disorder – were accepted as severe impairments that limit Plaintiff's RFC[2] but that do not preclude all work.

      Claiming that he suffers from disabling distractibility and the inability to concentrate, Tr. 43, Plaintiff now challenges the ALJ's decision for three reasons. First, focused on the ALJ's omission of a reference to the "preponderance" standard of review and the ALJ's determination

---

[1] Plaintiff's 2018 application was denied. Tr. 60.

[2] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 416.945(a)(1).

that Plaintiff's testimony regarding his difficulty with distractibility during "past work" was not enough to establish a more limited RFC "absent ample support in the objective medical records," Tr. 25, Plaintiff contends that the ALJ erroneously applied an improperly higher standard of review than the preponderance standard that is prescribed by law. ECF No. 11 at 8-9. Second, Plaintiff argues that the ALJ erred in how he dealt with the RFC opinion of a treating nurse practitioner, Nurse Valerie Almeida Monroe. Id. at 9-14. Third, Plaintiff contends that the ALJ erred at Step Five in failing affirmatively to ask the vocational expert ("VE") whether his testimony conformed to the Dictionary of Occupational Titles ("DOT"). Id. at 14-17.

Plaintiff's motion asks the Court to reverse the decision of the Commissioner denying his SSI application and to remand for an award of benefits or for further proceedings. Id. at 1. Defendant has filed a counter motion for an order affirming the Commissioner's decision. ECF No. 13. Both motions are before me on consent pursuant to 28 U.S.C. § 636(c).

**I. Background**

Plaintiff had a difficult childhood (living in foster care and group homes); he left high school before graduating and has not earned a GED. Tr. 328. He has virtually no work history and has spent much of his adult life incarcerated. Tr. 184-85, 481-82. Plaintiff suffered from serious "stomach" pain due to recurrent diverticulitis; his function report, signed on October 6, 2022, attributes his inability to work to the pain caused by this condition. Tr. 214, 219. However, in November 2022, this condition was successfully treated with surgery. Tr. 19, 39. At the ALJ hearing, Plaintiff advised that this condition is no longer in issue. Tr. 39.

Plaintiff also has been diagnosed with mental health conditions – bipolar disorder, antisocial personality disorder, PTSD, and anxiety disorder – that the ALJ found were severely limiting. However, he has had very little treatment for these conditions. Thus, the record

reflects that he was treated at Butler Hospital in 2014 and 2015, but the treating notes from Butler indicate that his condition was associated with the use of cocaine and other substances, as well as with his emotional reaction to having been fired from a job due to an accusation of stealing from the employer. Tr. 261-62, 274. MSEs[3] performed at Butler reflect various abnormalities but contain no adverse findings pertaining to Plaintiff's ability to concentrate and attend. Tr. 261, 268, 274-76. MSEs performed in 2018 at the Adult Correctional Institutions are uniformly normal, including clinical observations of normal ability to attend and concentrate. Tr. 288, 294, 306. MSE observations at a 2018 mental health assessment at Gateway were all normal except for thought content ("Hopelessness. Guilt.") and judgment ("Poor"); for "attention and concentration," the provider recorded Plaintiff's statement rather than an observation: "REPORTS DIFFICULTY, RACING TH[O]UGHTS." Tr. 321-22. The Gateway assessor noted that Plaintiff "appears to be quite impulsive." Tr. 318. There is no evidence that this 2018 assessment led to mental health treatment, including for attention/concentration. In 2021 and 2022, Plaintiff was treated for physical conditions at Rhode Island Hospital and by a gastroenterologist; MSEs performed during these encounters are entirely normal. E.g., Tr. 340, 462, 474.

In September 2022, Plaintiff filed his disability application. On October 6, 2022, Plaintiff signed and submitted a function report in which he wrote that his ability to work was impaired by stomach pain "flares," which impacted *inter alia* his ability to complete tasks. Tr. 214-15, 221; see Tr. 219 ("when my stomach starts to hurt I can't do anything because the pain is

---

[3] The mental status examination or "MSE" is an objective clinical assessment of an individual's mental ability, based on a health professional's observations. Samantha B. v. Bisignano, C.A. No. 25-00004MSM, 2025 WL 2992378, at *3 n.4 (D.R.I. Oct. 24, 2025), adopted, 2025 WL 3283309, (D.R.I. Nov. 25, 2025); June B. v. Bisignano, C.A. No. 24-245-MRD, 2025 WL 1939087, at *1 n.2 (D.R.I. July 14, 2025), adopted by text order (D.R.I. July 30, 2025); Nancy T. v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *5 n.7 (D.R.I. Mar. 7, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

3

bad"). He affirmatively denied any issues with impaired concentration. Tr. 219. On October 28, 2022, a consultative examination was performed by an SSA expert psychologist, Dr. Romina Dragone-Hyde. Tr. 480. As reported to Dr. Dragone-Hyde, Plaintiff is married, lives with his partner and five children and spends most of his day caring for the children. Tr. 481, 483. Noting that he was receiving no mental health treatment and taking no medication as of the time of the examination, Dr. Dragone-Hyde nevertheless observed he "did not demonstrate[] difficulty maintaining his attention and concentration"; Dr. Dragone-Hyde administered clinical tests of attention on which Plaintiff performed well. Tr. 484. She also found intact memory with good ability to think abstractly. Tr. 484. While Dr. Dragone-Hyde found that Plaintiff presented as "anxious and slightly hypomanic," with pressured speech, poor eye contact and fair to poor judgment/insight, she noted that he would have an "average" prognosis if he were to return to mental health treatment. Tr. 484. In November 2022 and May 2023, two SSA expert psychologists examined the file assembled to that point, including Dr. Dragone-Hyde's report, and found moderate limits in the areas of social interaction and adaption, but only mild limits in understanding, remembering or applying information and in concentrating, persisting or maintaining pace. Tr. 63, 72. They concurred in the finding that Plaintiff has no RFC limits impairing his ability to concentrate or persist based on Dr. Dragone-Hyde's test results and that he "can perform tasks in an independent, solitary work setting with few social demands." Tr. 65, 74.

      Unseen by the non-examining expert psychologists, in February 2023, Plaintiff established a treating relationship with Nurse Monroe at St. Joseph's Health Center.[4] Tr. 546-47, 550. As reflected in the medical record, Plaintiff saw her twice between the initiation of the

---

[4] The non-examining experts did not see these materials because this record was not produced until after the ALJ's hearing. Tr. 32.

treating relationship until the ALJ hearing a year later (on February 8, 2024). Tr. 503-10; see Tr. 32, 49 (Plaintiff testifies that he had only two appointments at St. Joseph's). The treating notes indicate that, at these two appointments, Nurse Monroe was addressing both physical and mental health; that is, she is not a mental health specialist. Nurse Monroe's prescribed treatment and/or follow-up covered a range of conditions, including hypertension, high cholesterol, Vitamin D deficiency and kidney function concern, as well as anxiety. Tr. 506, 510. At the first of these two encounters, on February 24, 2023,[5] Nurse Monroe focused on Plaintiff's recent surgery for diverticulitis and his blood pressure, as well as on sleep issues associated with a recently-started medication for anxiety; in response, she reduced that prescription. Tr. 507, 509-10. Nurse Monroe performed an extensive physical examination, but only a truncated mental status review. Tr. 509-10. In total, her mental status findings are: "active and alert and[] **anxious; fidgety**. Orientation: to time, place, and person." Tr. 509 (emphasis in original). At the next and only other encounter of record, on May 12, 2023,[6] Nurse Monroe noted that anxiety had improved based on recently initiated treatment with medication. Tr. 505 ("reports an improvement in his anxiety since last visit"). Her mental status findings on examination are identical to those made at the prior appointment. Id. Other than prescribing medication for anxiety (which she found to be efficacious), Nurse Monroe did not prescribe or recommend any other treatment for Plaintiff's mental health conditions, nor did she refer Plaintiff for specialized mental health treatment.

---

[5] Plaintiff's brief indicates that this appointment was on April 14, 2023; review of the record reveals that this is the date Nurse Monroe signed the note, but that the encounter date was February 24, 2023. Tr. 507, 510.

[6] Plaintiff's brief indicates that this appointment was on July 11, 2023; review of the record reveals that this is the date Nurse Monroe signed the note, but that the encounter date was May 12, 2023. Tr. 503, 506.

Four days after the ALJ hearing, Plaintiff apparently[7] saw Nurse Monroe again; a week later, she signed her mental RFC opinion, in which she opined to diagnoses of PTSD and bipolar disorder and findings of "hyperactive," "affect anxious," "difficulty maintaining focus" and "emotional lability." Tr. 547-48. Based on these findings, which contrast with her limited MSE observations ("**anxious; fidgety**"), Nurse Monroe opined to extreme RFC limitations, including serious limits or unable-to-meet-competitive-standards limits adversely impacting the ability to attend, concentrate, work near others without distraction, make even simple decisions, respond to supervisors or complete a workday or workweek. Tr. 509, 548 (emphasis in original). Also based on these findings, Nurse Monroe concluded that Plaintiff would be absent from work more than four days per month. Tr. 549. One aspect of the Monroe opinion is peculiar: she filled in a date – March 28, 2016 – in response to a question on the form asking about the "earliest date" that her description of Plaintiff's symptoms would apply, yet there is nothing in the record to suggest that she had any clinical basis for making such an observation in that it predates her contact with Plaintiff as well as his alleged onset date. Tr. 550.

During the hearing, in contrast to what he wrote in his function report, Plaintiff testified that he cannot work because it is hard to concentrate and that he was fired from past jobs, particularly a job he held briefly at Price Rite in 2022, because he was distracted and wandered off from where he was supposed to be or what he was supposed to be doing. Tr. 43.

## II.  Standard of Review

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42

---

[7] Nurse Monroe's opinion indicates that she saw Plaintiff on February 12, 2024. Tr. 547. The St. Joseph medical record, which was produced some time after the ALJ's hearing on February 8, 2024, does not reflect such an encounter. Tr. 32.

6

U.S.C. § 1383(c)(3); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). It is more than a scintilla and must do more than merely create a suspicion of the existence of a fact. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam). Further, while "'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." Clark v. Kijakazi, 673 F. Supp. 3d 119, 122 (D.N.H. 2023) (quoting Purdy, 887 F.3d 7 at 13); see Biestek, 587 U.S. at 103. The determination of substantiality is based on an evaluation of the record as a whole. Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015); see 42 U.S.C. § 1383(c)(3). If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits. Sacilowski v. Saul, 959 F.3d 431, 433, 440-41 (1st Cir. 2020); Randy M. v. Kijakazi, C.A. No. 20-329JJM, 2021 WL 4551141, at *2 (D.R.I. Oct. 5, 2021), adopted by sealed order (D.R.I. Oct. 28, 2021).

## III. Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3). The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. Id.; 20 C.F.R. §§ 416.905-06, 416.909-11.

### A. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. 20 CFR § 416.920. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Id. § 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Id. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404,

Appendix 1, the claimant is disabled. Id. § 416.920(a)(4)(iii). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. Id. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. Id. § 416.920(a)(4)(v). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski, 959 F.3d at 434; see Ulitsch v. U.S. Soc. Sec. Admin., No. 24-cv-00074-PB, 2025 WL 691054, at *4 (D.N.H. Mar. 4, 2025) ("claimant bears the burden at the first four steps to prove by a preponderance of the evidence that they are disabled"); see also Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### B.   Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 416.920c. The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 416.920c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024). Supportability refers to the quantum of relevant objective medical evidence and supporting explanations presented by a medical source to support the medical opinion or prior administrative medical findings; consistency refers to the degree to which a medical opinion or prior administrative medical finding is consistent with the evidence from other medical sources and nonmedical sources in the claim. 20 C.F.R. § 416.920c(c)(1)-(2). A medical opinion lacking adequate supporting evidence, or one that is inconsistent with evidence from other sources, is not persuasive

9

regardless of who made the medical opinion.  See Amanda B. v. Kijakazi, C.A. No. 21-308MSM, 2022 WL 3025752, at *2 (D.R.I. Aug. 1, 2022), adopted, 2022 WL 18910865 (D.R.I. Nov. 7, 2022).  Other factors that are weighed in light of all of the evidence in the record include the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding.  See 20 C.F.R. § 416.920c(a), (c).

IV.   **Analysis**

    A.   **Error in Applying Higher Standard of Review**

Focused on the ALJ's omission of an explicit reference to the "preponderance" standard of review, Plaintiff contends that the ALJ erroneously applied an improperly high standard of review.  ECF No. 11 at 8-9.  Plaintiff is right that the applicable regulation specifies that the ALJ must base his disability decision on the preponderance of the evidence.  20 C.F.R. § 416.1453(a).  However, nothing requires the ALJ to recite that fundamental proposition in the decision.  To the extent that Plaintiff's argument rests solely on the omission of a citation to this regulation or a recital of the preponderance evidentiary standard applicable in all Social Security disability cases, the Court rejects it as a basis for remand.

More substantively, Plaintiff contends that the ALJ's error in imposing a heightened standard of review is revealed by the ALJ's credibility determination discounting Plaintiff's pivotal subjective testimony regarding "lack of focus and distraction in past jobs":

> [T]he claimant's testimony about his lack of focus and distraction in past jobs alone, absent ample support in the objective medical record, is not sufficient to establish more restrictive residual functional capacity limitations than those delineated above.

Tr. 25.  Plaintiff, citing Aubeuf v. Schweiker, 649 F.2d 107, 112 (2d Cir. 1981), argues that this sentence reveals that the ALJ improperly required Plaintiff to produce "ample" objective medical

support for his subjective claim of distracted wandering at past jobs, particularly his testimony (Tr. 43) that he had been fired for distractibility at Price Rite, the job where he worked very briefly in 2022. ECF No. 11 at 8.

There is no question that it would amount to reversible error if the ALJ had eschewed the preponderance-of-evidence standard required by 20 C.F.R. § 416.1453(a) and relied instead on a concocted higher standard requiring the claimant to prove disability by "ample" evidence, whatever that means. See Aubeuf, 649 F.2d at 112-13 (ALJ erroneously finds claimant able to work despite testimony and medical reports all supportive of disability by requiring claimant to "conclusively establish" neurological abnormality causing intense pain) (internal quotation marks omitted); Maricelys S. v. Saul, C.A. No. 18-479WES, 2019 WL 2950129, *3-5 (D.R.I. July 9, 2019) (ALJ erred by expressly using clear and convincing standard), adopted by text order (D.R.I. Nov. 7, 2019). The problem with this argument is that the decision makes clear that the ALJ did not make this error. Thus, unlike the administrative judges in Aubeuf and Maricelys S., the ALJ here weighed the medical and other evidence, including Plaintiff's activities, his function report, Dr. Dragone-Hyde's clinical findings on examination, the overall paucity of any mental health treatment, the repeated clinical MSE observations that Plaintiff's ability to concentrate was not impaired and the dearth of clinical MSE observations supportive of Plaintiff's statement. See Tr. 22-25. Read in context, it is clear that the ALJ referenced "ample" evidence simply to explain further why he discounted Plaintiff's testimony that he had been fired for distractibility at Price Rite and other past jobs.[8] Thus, as the preceding sentences more fully

---

[8] The Court notes that Plaintiff has not argued that the ALJ's credibility finding regarding this testimony fails to meet the standard set by Sacilowski, 959 F.3d at 441. Nor could he. There is ample evidence supportive of the ALJ's determination (to which the ALJ refers in the decision) to discount this aspect of Plaintiff's testimony. E.g., Tr. 21, 24. For example, as the ALJ finds, this testimony clashes with the Dragone-Hyde report. Tr. 24. Specifically, this testimony differs markedly from what Plaintiff told Dr. Dragone-Hyde regarding the loss of this job – "he left after one week due to his current medical issues," which Plaintiff further explained to Dr. Dragone-Hyde consisted of diverticulosis, dyspnea and epididymo-orchitis (he had not yet had the surgery that resolved his

describe, the ALJ's credibility analysis is appropriately based on the juxtaposition between this part of Plaintiff's testimony and the almost complete lack of treatment for psychiatric conditions, the relatively benign MSE findings throughout the record and the effectiveness of medication for anxiety once Plaintiff took it as prescribed. Tr. 24-25. With this record as background, the ALJ's reference to "ample" means only that, with the objective medical evidence all inconsistent with Plaintiff's subjective statement that he was impaired by the inability to concentrate, the record would need "ample" contrary evidence to render his statement credible. See West v. Colvin, No. 12-cv-272, 2013 WL 4478780, at *13 (N.D. Ill. Aug. 19, 2013) (court rejects argument that ALJ's sentence stating that credibility determination rests on lack of objective medical evidence permits interpretation that ALJ used more exacting standard than preponderance of evidence).

Plaintiff also invokes the well-settled proposition articulated in Dianne D. v. Berryhill, that "[i]t is error for the ALJ to place 'an extreme insistence on objective medical findings to corroborate subjective testimony of limitations of function because of pain.'" C.A. No. 18-312JJM, 2019 WL 2521840, at *5 (D.R.I. June 19, 2019) (quoting Avery v. Sec'y Health & Human Servs., 797 F.2d 19, 21 (1st Cir. 1986)), adopted by text order (July 5, 2019); see ECF No. 11 at 8. This argument is equally unavailing. In Dianne D., the ALJ erred in discounting claimant's subjective claim of debilitating pain acknowledged by multiple treating sources caused by a botched abdominal surgery due to the lack of an objective diagnosis to explain the reason for the pain. 2019 WL 2521840, at *1-3. Unlike Dianne D., in this case, the impairment

---

diverticulitis). Tr. 482; see Tr. 43. Also, in his clinical interview with Dr. Dragone-Hyde, Plaintiff affirmatively denied "any disciplinary issues while working," stating that his ability to hold a job was adversely impacted by his legal status as a sex offender. Tr. 482. In addition, Plaintiff's function report, on which the ALJ relied in making his concentration/attention finding, Tr. 21, clashes with this testimony in that Plaintiff reported he could not work due to stomach pain and he did not check the box for issues with "concentration." Tr. 219.

causing pain (diverticulitis) resolved. Id.; see Tr. 39. The symptom that is the subject of the ALJ's sentence on which Plaintiff has focused is impaired concentration, which is clinically observable on MSE and diagnosed through the types of clinical tests that were administered by Dr. Dragone-Hyde. See Tr. 25, 484. As the ALJ correctly found, Plaintiff's medical history is utterly devoid of any clinical observations of significant concentration/attention findings. The only potentially consistent clinical observation anywhere in the record is Nurse Monroe's notation that Plaintiff was anxious and fidgety during her two appointments with him. Tr. 509. However, Nurse Monroe's treating notes contain no clinical observations of impaired concentration/attention or distractibility, nor do they reflect any diagnosis, treatment or referral for such condition. See, e.g., Tr. 509-10. To the contrary, her mental health treatment was limited to medication for anxiety, which she found to be effective. See id. Thus, the ALJ appropriately relied on Plaintiff's lack of any clinical symptoms to support his subjective statement and did not err by an inappropriately "extreme insistence on objective medical findings" as condemned in Dianne D., 2019 WL 2521840, at *5.

At bottom, having reviewed the entirety of the file, the Court finds that the ALJ's weighing of the evidence was eminently reasonable and entirely in accord with both the applicable regulations, as well as the beneficent purpose of the Social Security Act. See Cheyenne R. v. Kijakazi, C.A. No. 21-473WES, 2022 WL 18910866, at *7 (D.R.I. Sept. 23, 2022), adopted by text order (D.R.I. Oct. 25, 2022). The Court finds no error in the ALJ's approach to the burden of proof.

      B.    **Error in Assessing Opinion of Nurse Monroe**

Plaintiff contends that the ALJ erred in finding that the RFC opinion of a treating source, Nurse Monroe, is unpersuasive. ECF No. 11 at 9-14; see Tr. 24. This argument fails because the

ALJ correctly noted that Nurse Monroe's two examinations of Plaintiff (resulting in the limited finding that he was anxious and fidgety, with anxiety improving with medication) do not support her opinion, as well as that the RFC opinion is inconsistent not just with Nurse Monroe's treating notes, but also with the balance of the record, including the findings of the mental health specialist and expert psychologist Dr. Dragone-Hyde (whose findings, like Nurse Monroe's, were also based on examination). Tr. 24. Nor did the ALJ err in also considering Nurse Monroe's unexplained and unsupported reference to a date (March 28, 2016) as the starting point of the extreme symptoms to which she opined. Id. Nor did the ALJ err in failing to separately discuss absenteeism in a case with no evidence of symptoms that would cause absenteeism apart from Nurse Monroe's unpersuasive opinion. See Roberta L. v. O'Malley, C.A. No. 23-234-PAS, 2024 WL 3886654, at *7 (D.R.I. Aug. 20, 2024) (with little evidence that claimant would be limited by absenteeism and only contrary evidence was appropriately afforded little weight, no error in ALJ's failure affirmatively to analyze absenteeism), adopted by text order (D.R.I. Sept. 4, 2024); Jacquelyn V. v. Kijakazi, C.A. No. 21-314MSM, 2023 WL 371976, at *5 (D.R.I. Jan. 24, 2023) (reversible error if ALJ fails specifically to assess absenteeism only if symptoms would cause claimant periodically to be unable to attend work), adopted by text order (D.R.I. Mar. 7, 2023).

    C.    **Error at Step Five**

Plaintiff contends that the ALJ erred at Step Five in failing affirmatively to ask the VE whether his testimony conformed to the DOT, which Plaintiff argues was required by then-applicable SSR 00-4p. ECF No. 11 at 14-17; see SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000; rescinded Jan. 6, 2025). This argument fails because, before it was rescinded, SSR 00-4p required only that the ALJ must ask the VE for a "reasonable explanation for any conflicts

14

between the occupational evidence presented and the information in the [DOT]." SSR 00-4p, 2000 WL 1898704, at *1. In this case, the VE's initial answer to the ALJ's hypothetical-based question incorporates the DOT by referencing exemplar jobs by DOT number. Tr. 54. Confirming that the testimony listing jobs by DOT numbers was based on and not in conflict with the DOT, the ALJ followed up on the VE's testimony about absenteeism by asking, "[s]ince absenteeism and off task behavior is <u>not covered by the [DOT]</u> on what did you base your testimony today?" Tr. 55 (emphasis supplied). On examination by Plaintiff's counsel, the VE reconfirmed his reliance on the DOT by explaining that his testimony about a "racker" job was as defined by the DOT number given in his initial answer and that the DOT uses the term "racker" for a different job designated by a different DOT number, as well as that the DOT has a different jewelry industry job with another DOT number. Tr. 57-58. The VE noted that the DOT's use of the same term ("racker") for a different job is "one of the confusing issues with the DOT." Tr. 58. As to one of the three exemplar jobs – cleaner/housekeeper – the VE testified that Plaintiff's inability to have contact with the public required the reduction of available jobs within that category by half. Tr. 55.

Plaintiff is right that neither the ALJ nor Plaintiff's counsel affirmatively asked whether the VE's testimony listing exemplar jobs by reference to DOT numbers conformed to the DOT. Despite Plaintiff's argument, that is not error because that is not what SSR 00-4p required. <u>See</u> 2000 WL 1898704, at *1. What matters is whether the VE gave a "reasonable explanation" of any conflict with the DOT. <u>Id.</u> Based on the Court's review of the transcript as described above, it is clear that nothing arose during this hearing to suggest an unexplained conflict with the DOT, which would have made follow-up questions by the ALJ mandatory pursuant to SSR 00-4p. <u>See</u> <u>Barbara M. v. Berryhill</u>, C.A. No. 18-73PAS, 2019 WL 950167, at *6 (D.R.I. Feb. 27, 2019).

Thus, Plaintiff's argument that there is conflict with the DOT because the VE affirmatively reduced the number of cleaner/housekeeper jobs by half fails because the VE gave the "reasonable explanation" that the reduction was to restrict them to cleaner/housekeeper jobs within the set of jobs defined by the DOT number that can be performed with no contact with the public, Tr. 55, and Plaintiff waived his right to ask more questions about this explained conflict with the DOT during the hearing. See SSR 00-4p, 2000 WL 1898704, at *1. Plaintiff also argues that the VE testified that his own testimony about the racker job was confusing. ECF No. 11 at 14. This is belied by the transcript – the VE testified that it is the DOT that is confusing unless the DOT number is used, which is what the VE did. Tr. 58. The Court finds that the ALJ did not erroneously deviate from the requirement of SSR 00-4p.

## V.   Conclusion

Mindful that it is the Court's "job . . . to . . . review the record and determine whether a reasonable mind . . . could accept it as adequate to support [the ALJ's] conclusion," Burton v. Kijakazi, the Court finds that remand – either for further proceedings or for an award of benefits as Plaintiff seeks – is not appropriate and affirms the ALJ's well supported and legally correct decision. Civil Action No. 21-cv-11916-ADB, 2023 WL 2354901, at *8 (D. Mass. Mar. 3, 2023) (internal quotation marks omitted). Based on the foregoing, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) is DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) is GRANTED. The Clerk's Office is directed to enter judgment in favor of the Commissioner.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 11, 2026